RAPALJE v. HALL and others, Executors of NORSWORTHY.

A trustee is not to pay interest, solely for the reason that he deposites the trust mo-
nies indiscriminately with his own; nor because he makes use of them in his own
business. There must be superadded, a breach of trust; a neglect or refusal to
invest the fund, at the time, or in the mode, which the trust instrument, or the law
itself, has pointed out.

A testator directed his executors and trustees to pay over to the testamentary guar-
dians of his children, the net income of his estate from year to year, and that the
guardians should put at interest on good real security, the surplus of the income.
There was a surplus income belonging to C., one of the children, at the end of
each year for twelve years, amounting to from $200 to $700 annually. The
principal guardian, (who was also an executor,) mingled the surplus monies with
his own, and used them a part of the time in his business as a merchant. No in-
vestment was made during the whole period.

The guardian was decreed to pay interest at the legal rate, from each period when
the surplus income accumulated to $1000.

Not expecting to pay interest, the guardian had omitted to charge commissions. He
was allowed his commissions by the decree.

The income came to the hands of the executors at various periods of the year from
February onward, and was paid over to the principal guardian in December.
Held, that being an executor also, he should not be permitted in the accounting,
to retain without interest, from any sum of $1000, accumulated as before directed,
for advances for his ward during the ensuing year.

A guardian exhibited his books of account to his ward from year to year, and also
when she became of age, and at that time made a statement showing the balance
due to her. A similar paper was made showing the balance the next year. No
formal account was delivered to her, nor did she examine the particulars of the
accounts in the books. Held, that she was entitled to an account of the whole trust.

March 18; June 1, 1844.

THE bill was filed by Silas M. Stilwell and Caroline Nors-worthy his wife, and Silvanus Rapalje, the trustee of Mrs. Stilwell under a marriage settlement, for an account of her share of the personal estate, and of the rents and profits of the real estate of her father, Samuel Norsworthy, deceased. The defendants were his executors, and two of them were testamentary guardians.

The testator died on the 26th of December, 1828, leaving a widow and eight children, the latter being all minors.

By his will, he directed his personal property, except his furniture, to be put at interest on good real security, and he devised the same, and all his real estate to his executors in trust, to receive the income, rents and profits, till his youngest child became of age, to pay one-third of the same to his widow for life, and appropriate the residue equally among his children. He appointed his wife, and William B. and Burtis Skidmore, to be the guardians of the persons and property of his children during their minority, and directed them to put at interest on security on real property, such portion of the income of his children during their minority, as might not, in the guardian's opinion, be necessary for their education, maintenance and support.

The two Skidmores, James Hall and Andrew L. Halstead, were the executors named in the will, and all of them assumed the trust.

The management of the estate however devolved upon the Messrs. Skidmore, who were also the acting guardians. The widow never intermeddled with the property.

The youngest child of the testator was twenty years of age when the bill was filed.

Three of the children died intestate and without issue, prior to Caroline's becoming of age, which was on the 9th of January, 1841. She was married to Mr. Stilwell on the 8th of September, 1842.

The testator's personal estate was more than $23,000, and he left a large and productive real estate. The income of the estate increased steadily from the time of his death until 1839, when

it amounted to $15,000 a year, and has continued at that rate since.

The answer stated that in January, 1841, after Caroline became 21, she requested W. B. Skidmore, to settle his account as her guardian; and they thereupon settled, and ascertained that $4400 68 was her due, and he offered to pay it to her. She asked him to keep and invest it, and he agreed to keep it and pay her interest on $4000 until it was invested. On the 1st of January, 1842, at her request, he rendered to her a further account stated in writing, showing $5133 02 due, and made a like offer to pay; she requested him to keep the amount to invest, and he consented, but declined to agree to pay any interest. On the 26th of May, 1842, he rendered another account in writing, and they settled to that time. He had before procured for her a bond and mortgage of $2000. At that time he agreed to pay interest on the balance, which was $2886 02.

It appeared by the evidence, that no formal account was rendered to Miss Norsworthy. The books of W. B. Skidmore were exhibited to her in his office, and she looked at them cursorily, and the result or balance as he stated it, was handed to her, or to some person for her, in writing. It did not appear that she had ever examined the items of the accounts entered in the books.

The net rents of the property, in the usual course of managing the estate, were paid over by the executors annually to W. B. Skidmore as guardian, in the month of December.

The bill charged that there was at the end of each year, a considerable surplus, which the guardians ought to have invested; that the defendants mingled the monies of the estate with their own and used them constantly in their business, and that they ought to pay interest on the yearly surplus sums.

The answer admitted that no separate bank account was kept, but denied that the money was constantly used in their business. It insisted that the balances were too small to invest on real security, and the inflated valuations of real estate made such investments hazardous. The answer stated that the guardian, W. B. S., was the uncle of Miss Norsworthy; he had charged her no commissions, and ought not to pay her interest.

The accounts of each ward had been kept separately and accurately, and the guardians had always sufficient funds on hand to pay the balance due to her, at any hour. The yearly balance in the hands of W. B. Skidmore, was thus stated in the answer.

| | | | | | | |
|---|---|---|---|---|---|---|
| 1829, | December, | $202,83 | | 1836, | December, | $315,88 |
| 1830, | " | 213,87 | | 1837, | " | 397,37 |
| 1831, | " | 549,80 | | 1838, | " | 634,35 |
| 1832, | " | 76,71 | | 1839, | " | 680,00 |
| 1833, | " | 319,63 | | 1840, | " | 341,02 |
| 1834, | " | 359,42 | | 1841, | " | 502,42 |
| 1835, | " | 309,71 | | 1842, | " | 1255,84 |

Two witnesses for the defendants testified that it was difficult to loan small sums on bond and mortgage ; and there is a scarcity of applicants for such loans.

*J. L. Mason* and *D. B. Tallmadge,* for the complainants.

*Alex. S. Johnson,* for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—There is no such settlement of the accounts of the trustees, or of W. B. Skidmore, as guardian, established by the evidence, as to preclude the complainants from having the accounts taken in this suit.

If the statement in the answer were proved, and moreover, a release were shown to have been executed by Mrs. Stilwell in January, 1841, the court, on very slight suspicion of error in the accounts, would have opened the whole. Mrs. S. became of full age in that month, and a settlement made then with her uncle and principal guardian, without the presence of counsel, or even a disinterested friend, would have been regarded with great distrust by a court of equity.

There is no pretence, however, that Mrs. Stilwell ever did look into the accounts at large, not even of her own share of the income and her own expenses, much less the general accounts of the estate. And the delivery by Mr. Skidmore of a mere slip of paper, specifying a balance due to her in a gross

sum, if it were shown to have been made to her in person, would not conclude her, or bar her from requiring a proper settlement.

It is no answer to this application for the trustees to say that they have accounted to the guardians, two of whom are trustees and executors. The *cestuis que trust :* are entitled to an account of their trust from the executors as well as the guardians.

The principal question, and I presume, the only one which has occasioned any difficulty between the parties, is the claim for the allowance of interest to Mrs. Stilwell on the balances due to her from year to year.

As those balances are stated by the defendants, (and they were assumed to be correct for the purpose of the argument,) they ranged, during the minority of Mrs. Stilwell, from about $200 to nearly $700 per year. At the end of three years from the death of the testator, the aggregate of the annual balances was $966 50 ; for the next three years, their aggregate was $755 76 ; for the three next, $1022 96 ; for the three next, $1655 37. The next year was 1841, which exhibited a balance of $502 42, while that for 1842 was $1255 84. The testator directed the guardians to put the surplus income at interest on security, on real property.

In the management of the estate which was adopted, the annual income came into the hands of W. B. Skidmore, about the close of each year. He kept no separate bank account, but deposited the monies of the estate with his own. He probably kept a good bank account, and was always prepared to meet any of the usual requisitions on behalf of the estate of Mr. Norsworthy, or of his family, from time to time. He was a merchant in active business.

He denies that he used any of the money in speculations, or that he used it *constantly* in his business. By omitting to deny that he *used it in his business*, he admits that allegation of the bill.

On the other hand, there was but one mode of investment authorized by the will. And the early balances were so small,

that proper investments, in that mode were not often afforded. There is no testimony to show that any suitable investment on the security of real estate, was ever brought to his notice, or that he ever declined to make a loan of the money on mortgage. These are the facts bearing upon the point of interest.

The authorities do not establish that a trustee is to pay interest, solely for the reason that he deposites the trust monies indiscriminately with his own; nor because he makes use of them more or less in his own business. In both instances, there must be superadded, a breach of trust; a neglect or refusal to invest the fund at the time or in the mode which the trust instrument, or the law itself, has pointed out. In the case where the trustee has made use of the funds, but no such breach of trust is shown, he may be charged with interest, if it be proved that he has made interest. No such thing is established here, and the claim for interest rests therefore upon the omission to invest the surplus. In considering that omission, I cannot act upon the suggestion that the shares of all the devisees at the end of each year might have been combined, and would thus have afforded an ample sum for investment on mortgage: The case discloses no such fact; and if it had, the propriety of such a combination of the several estates would be a matter of serious doubt.

I have not gone into a collation of the decisions here or in England, bearing upon these propositions, deeming the law of the court on the subject to be well settled and as well known.

I will however refer briefly to a very late case, upon the duty of the trustees to make investments of small sums on a prescribed security.

In *Wyatt* v. *Wallis*, (8 Lond. Jur. Rep. 117,) before the V. C. of England, Nov. 20, 1843, the testator directed his trustees and executors to invest the residue of his estate on good freehold security. The trustee retained in his hands a balance of more than £300 for a period of more than two years. Some part of it was in the hands of his bankers, but what proportion of it, did not appear. He had employed a solicitor to procure a proper investment. It was held that he was not responsible for interest on the balance, although he had been informed of certain

persons who were desirous of borrowing money on freehold security. The court say that to make out a breach of trust under the circumstances, the plaintiff should have ascertained a proper security and then informed the trustee of the opportunity. The plaintiff was an adult. Some stress was laid by the vice-chancellor on the fact that the sum was small and the species of security limited. The counsel conceded that if it had been deposited in the banker's hands, and the trustee had not derived any benefit from it, he would not have been chargeable with interest.[a]

Taking the proofs before me as a guide, I think no injustice will be done if interest be charged on the accumulated balances from the time that they amount to about $1000. And inasmuch as the period when they would attain that amount must usually have been known at least a year before hand, so that there was ample time to provide an investment, the interest should commence at the close of December, when the annual balances appear to have been made up.

Thus, if the accounting before the master results substantially as it is stated in the answer, the master will charge interest from December, 1832, on the aggregate balances to that time ; and from December, 1835, on the balances in 1833, 1834, and 1835 ; and from December, 1840, on the balances of 1839 and .1840. So, if it turns out that in December, 1831, there was due to Mrs. Stilwell $1000 or more, the interest on the amount will commence at that date.

The case is not one for compound interest. Nor on the other side, is it proper to permit Mr. Skidmore to withhold from the subjection to interest, at any of the periods when interest is directed to commence in the mode which I have mentioned, any portion of the income then in hand, for the payment of the expenses of the ensuing year. The estate appears to have been productive by means of rents, and ordinarily, the trustees would receive in February a portion of the income for the current year. So that at no time would they or the guardians neces-

---

(a) See *Westover* v. *Chapman*, (1 Colly. Ch. Ca. 177.)

sarily be in advance, on the principle adopted, longer than from the end of December to the ensuing February. While in about two years out of three, they would have in their hands a large surplus, which it appears they did not always suffer to remain idle.

I cannot listen to the suggestion that W. B. Skidmore was advancing from his own funds every year until December, while the accruing income of the estate was in the hands of his co-executors, or the other guardians, and ought to have been applied to the current charges and expenses.

The defendants are entitled to their commissions. Mr. Skidmore's omission to claim them, is no reason why he should be deprived of them, when a strict legal claim is made against him, which he did not, at the time of such omission, expect would be made.

This disposes of all the questions which it is proper to determine before the accounts are taken.

There will be a decree for an account with the special directions above stated; and reserving all further questions and directions till the coming in of the master's report.